UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AGRON SKRELJA,

    Plaintiff,                                 Civil Action No. 15-CV-12460

vs.                                            HON. BERNARD A. FRIEDMAN

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,

    Defendant.

_____/

## OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
## GRANTING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendant's motion for summary judgment [docket entry 9] and plaintiff's cross motion for summary judgment [docket entry 12]. Response and reply briefs have been filed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

This is an insurance coverage case. Plaintiff alleges that on March 16, 2014, he suffered a loss to real and personal property at 51145 Fantasia Drive ("the Fantasia property"), in Macomb, Michigan, when the home's water pipes froze and burst. Compl. ¶¶ 9-10. At the time of this loss, the property was insured by defendant State Automobile Mutual Insurance Company ("State Auto") through a homeowner's policy, the premiums for which plaintiff had paid. *Id.* ¶ 7. Defendant denied the claim on May 16, 2014, on the grounds that plaintiff was not living at the house at the time of the loss, and therefore the house did not meet the definition in the policy of the covered "residence premises." A copy of defendant's denial letter is attached to the complaint as

Attachment 2.[1]  Plaintiff asserts a single claim for breach of contract.  For relief, he seeks damages, penalty interest, costs, and attorney fees.

Defendant seeks summary judgment on the same grounds it presented in its denial letter – namely, defendant did not breach its contract with plaintiff because the policy covers only "residence premises," and the house was not "residence premises" at the time of the loss because plaintiff was not living there.  In response, plaintiff seeks summary judgment on the grounds that he was indeed living in the house at the time of the loss, although for health reasons his pregnant

---

[1] In relevant part, this letter states at pp. 2-3:

> After obtaining possession [on December 19 or 20, 2013], you were in the process of working on the house preparing it for occupancy. You also told us that you had not slept at the house or moved contents into the dwelling prior to the loss.  Instead, you were anticipating receiving a bonus in April after which time the work would be completed and your belongings moved in "bulk" into the house.  Accordingly at the time you applied for insurance with State Auto, and at the time of the loss, you did not reside at 51145 Fantasia Dr., Macomb, MI 48042.
>
> However, you were residing at your parent's [sic] house at 63621 Monticello East, Washington, MI 48095 with you [sic] wife at the time you applied for your State Auto policy and at the time of loss, as well as for the seven prior years.  It is our understanding that you were paying you [sic] parent's [sic] rent during all or some of that time.
>
> Accordingly, . . . it is State Auto's opinion that the dwelling at 51145 Fantasia Dr., Macomb, MI 48042 was not covered property on the date of loss . . . because it did not qualify as "residence premises" . . . .  By your admission, you did not reside at 51145 Fantasia Dr., Macomb, MI and therefore it does not meet the definition of 11. "Residence premises", a., b., or c.  Therefore, the dwelling is not covered property and as such, it is not insured . . . .

wife had not yet moved in.

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See Anderson,* 477 U.S. at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

Further, under Michigan law the following rules apply in interpreting an insurance policy:

> Michigan law requires us to interpret the language of the insurance policy using Michigan's principles of contract construction. *Arco Industries Corp. v. American Motorists Ins. Co.*, 448 Mich. 395, 402, 531 N.W.2d 168 (1995). First, an insurance contract must be enforced in accordance with its terms. *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 207, 476 N.W.2d 392 (1991). An insurance company can not be held liable for a risk it did not assume under the policy. *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567, 489 N.W.2d 431 (1992). We do, however, apply the rule of reasonable expectations. Under this rule, a court finds coverage under a policy

3

> if "the policyholder, upon reading the contract language, is led to a reasonable expectation of coverage." *Marlo Beauty Supply, Inc. v. Farmers Ins. Group of Companies*, 227 Mich.App. 309, 575 N.W.2d 324 (1998) (quoting *Fire Ins. Exchange v. Diehl*, 450 Mich. 678, 687, 545 N.W.2d 602 (1996)).
>
> Second, insurance policy terms that are clear and precise must be enforced as written. *Stine v. Continental Casualty Co.*, 419 Mich. 89, 114, 349 N.W.2d 127 (1984). While the policy is construed in favor of the insured when an ambiguity is found, *Auto Club Ins. Ass'n v. DeLaGarza*, 433 Mich. 208, 214, 444 N.W.2d 803 (1989), we can not apply strained constructions to the meaning of well recognized words, solely for the purpose of benefitting an insured. *Upjohn Co.*, at 208, n. 8, 476 N.W.2d 392 (quoting *Wozniak v. John Hancock Mutual Life Ins. Co.*, 288 Mich. 612, 615, 286 N.W. 99 (1939)). We must interpret the terms of the contract in accordance with their commonly used meanings. *Group Ins. Co. of Michigan v. Czopek*, 440 Mich. 590, 596, 489 N.W.2d 444 (1992).

*Secura Ins. v. Stainless Sales, Inc.*, 431 F.3d 987, 990 (6th Cir. 2005).

In the present case, the policy covers "[t]he dwelling on the 'residence premises' shown in the Declarations." Def.'s Ex. 1, Section I - PROPERTY COVERAGES. The term "residence premises" is defined as

> a. The one family dwelling where you reside;
>
> b. The two, three or four family dwelling where you reside in at least one of the family units; or
>
> c. That part of any other building where you reside;
>
> and which is shown as the "residence premises" in the Declarations. "Residence premises" also includes other structures and grounds at that location.

*Id.* DEFINITIONS ¶ 11.

The parties agree, in accordance with *Heniser v. Frankenmuth Mut. Ins.*, 534 N.W.2d 502 (Mich. 1995), and *McGrath v. Allstate Ins. Co.*, 802 N.W.2d 619 (Mich. App. 2010), that defendant's policy covers the Fantasia property only if plaintiff was residing there at the time of the

4

loss. The parties disagree, however, as to whether plaintiff was residing there at that time because they disagree as to the meaning of the word "reside."

Plaintiff purchased the Fantasia property on October 31, 2013, and insured it with defendant. Pl.'s Dep. at 30-31, 35. Apparently the seller remained in the home for six or seven weeks. *Id.* at 33, 44. Between December 2013 and March 2014, plaintiff made some repairs to the Fantasia property (e.g., replacing the furnace and doing some painting), moved a small amount of clothing and furniture into the house, and on most days he spent several hours per day there to clean, make repairs, deal with contractors, and to telework. The utilities were connected and the house was kept heated. During this time plaintiff's wife lived at plaintiff's parents' house ("the Monticello property"), where plaintiff paid rent, because she was pregnant and did not want to move into the Fantasia property until all renovations were completed. Plaintiff likewise slept at the Monticello property. *See generally* Pl.'s Dep., Nora Skrelja Dep., Pl.'s Aff. Defendant notes that plaintiff did not change his address to the Fantasia property on his driver's license or employer's records, or with his bank, credit card and cell phone providers, or the postal service.

On these facts, defendant argues it is entitled to summary judgment because "[p]laintiff did not reside at the Fantasia property and, therefore, it is not his residence premises." Def.'s Summ. J. Br. at 2. Defendant contends that "*Heniser* and *McGrath* control the coverage question in this case." *Id.* at 12. In *Heniser*, plaintiff sold his vacation house on a land contract. Two months later, the house was destroyed by fire. The insurer denied coverage on the grounds that plaintiff did not reside at the property at the time of the loss, citing "residence premises" policy language similar to that of the present case. The Michigan Supreme Court affirmed the judgment for the insurer because "the insured [must] reside[] at the insured premises when the loss occurs,"

534 N.W.2d at 509, and plaintiff admitted "that he did not actually live at the insured premises at the time of the fire and that he did not intend to live there in the future." *Id.* at 506. The Court did not define "reside" beyond noting that the term requires "actual physical presence." *Id.*

In *McGrath*, the elderly homeowner moved out of her house to live elsewhere with her daughter. Her relatives occasionally used the house, but the homeowner herself never did again after moving. Years later, the house sustained water damage. The insurer, citing "residence premises" language in the policy, denied coverage on the grounds that the owner was not living at the house when the loss occurred. The Michigan Court of Appeals agreed with the insurer, finding that "the term 'reside' requires that the insured actually live at the property," 802 N.W.2d at 624, and that the homeowner did not meet this definition because she "lived full-time in an apartment in [another city] for more than two years before the loss occurred." *Id.* at 625. The court noted that "reside" is defined by one dictionary as meaning "to dwell permanently or for a considerable time; live," and by another as meaning "[t]o live in a place permanently or for an extended period." *Id.* at 622.[2]

---

[2] Defendant, at pp. 4-5 of its reply brief, quotes from another dictionary's definition of related terms:

> *Merriam Webster's Collegiate Dictionary* (11th ed), defines "residence" in relevant part as, "the act or fact of dwelling in a place for some time ... the place where one actually lives as distinguished from one's domicile or place of temporary sojourn...." *Id*. "Dwelling" is defined as, "a shelter (as a house) in which people live," and "live" is defined as "to occupy a home." *Id*.

These definitions do not alter the Court's conclusion in this case, as plaintiff clearly lived in and occupied the Fantasia property and not on a temporary basis.

Neither *Heniser* nor *McGrath* answers the question raised in the present case.[3] In both of those cases, the policyholders did not live at the insured premises at the time of the loss. In *Heniser*, the policyholder had sold the house and was not living there when the fire occurred. In *McGrath*, the policyholder had moved out of the house and had been living elsewhere for years when the water damage occurred. By contrast, in the instant case the policyholder was physically present at the insured premises on nearly a daily basis, for "eight to ten hours a day," Pl.'s Dep. at 51, doing various things including cleaning, painting, meeting with friends and contractors, eating, teleworking, exercising, and showering. Defendant does not point to any policy language, or to any case law interpreting the terms "dwelling" or "residence premises," to suggest that plaintiff was required, lest coverage be denied, to live *solely* at the Fantasia property, or to spend a certain minimum number of hours there on a daily or weekly basis, or to sleep there, or to eat particular meals there, or to have his mail delivered there, or to keep any particular amount of clothing or furniture there. The Court agrees with defendant that the policy language is not ambiguous because the Michigan courts have defined it: Plaintiff was required to reside at the Fantasia property in order for defendant's policy to afford coverage, and "reside" means he had to occupy the house and live there, be physically present there, and not use the house merely as a place of "temporary sojourn." Defendant has not shown that plaintiff was not living there, and plaintiff has shown the contrary. The evidence clearly shows that plaintiff was living both at the Fantasia property and at the Monticello property at the time of the March 2014 loss, as he was spending his days at the former

---

[3] Nor is this question answered by the other "residence premises" case cited by defendant in its reply brief. In *Null v. Auto-Owners Ins. Co.*, No. 308473, 2013 WL 5731840, at *2 (Mich. Ct. App. Oct. 22, 2013), the Michigan Court of Appeals affirmed summary disposition for defendant because the insured "did not reside in the home at the time of the fire." In fact, the insured "had not lived in the home for several years." *Id.* at *1.

and eating dinner and sleeping at the latter. Defendant points to no authority suggesting that plaintiff may reside/live/dwell at only one house.

On this record, defendant plainly breached the insurance contract by denying coverage for the March 16, 2014, loss at the Fantasia property. Therefore, the Court shall deny defendant's motion for summary judgment and grant plaintiff's cross motion for summary judgment. The Court shall also award plaintiff 12% penalty interest under Mich. Comp. Laws § 500.2006 for defendant's failure to timely pay this claim. No attorney fees are awarded, as plaintiff has not responded to defendant's argument that no basis for such an award exists in this case. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's cross motion for summary judgment is granted. The judgment shall provide for the requested declaration and for 12% penalty interest.

S/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: June 20, 2016
       Detroit, Michigan